# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| J&J SPORTS PRODUCTIONS, INC. | : CIVIL ACTION |
|---|---|
| v. | : |
|  | : NO. 17-4046 |
| TIMOTHY ALLEN, *et al* | : |

**KEARNEY, J.**                                                                                                           **March 13, 2018**

## MEMORANDUM

Federal law prohibits stealing encrypted pay-per-view telecasts. Congress defines the available measure of damages, including statutory damages, enhanced damages and reasonable attorney's fees and costs. Failing to answer a complaint admits liability and allows an award of reasonable attorney's fees and costs to the prevailing party against the defaulting party under the statute. But we must evaluate the proofs for statutory and enhanced damages. When, as here, the lawful distributor of the encrypted telecast does not pursue discovery or offer specific damages demonstrating its losses or the violator's profits, we review statutory and enhanced damages based on factors including the fee which should have been paid, evidence of a cover charge and willfulness against the persons responsible for the piracy. In the accompanying Judgment, we award statutory damages equal to the fee plus the aggregate cover charge as a profit with a 33% enhancement based on advertising against the entity responsible for promoting and presenting the pirated telecast. Absent evidence the managing member of the offending entity actually controlled the entity or knew of the piracy, we cannot impose personal liability on a person possibly owning interests in the entity or designated as a managing member.

I.  **Facts adduced in sworn pleadings and our noticed hearing.**

J&J Sports Productions, Inc. purchased proprietary rights to distribute "Floyd Mayweather Jr. v. Andre Berto WBA/WBC Welterweight Championship Fight Program" ("Fight") by interstate pay-per-view encrypted transmission.[1] In turn, J&J signed licensing agreements with commercial establishments to exhibit the Fight. J&J encrypts its interstate transmission to ensure the Fight is available only to J&J's customers who pay a defined fee based on the capacity of the space being used for commercial purposes.

A fictitious entity UE Radio advertised, and then intercepted and showed the encrypted transmission of the Fight without purchasing rights from J&J.[2] UE Radio is a fictitious name owned and operated by UE Kitchen, LLC.[3] Timothy Allen is the managing member of UE Kitchen, LLC d/b/a UE Radio and allegedly has "an obvious and direct financial interest in the activities of UE Radio."[4] Mr. Allen allegedly supervised UE Radio's employees and directed them to intercept the signal and show the Fight without paying for licensing fees.[5]

At a noticed hearing, we reviewed an Instagram post announcing UE Radio would show the Fight at 2217 N. American Street.[6] The undisputed evidence confirmed the capacity of this facility is approximately 100 persons.[7] Under the "rate card", a commercial entity seeking to televise the Fight in a room with a capacity of approximately 100 people based on its fire code occupancy is required to pay a $2,000 fee to J&J.[8]

Alerted by the advertising, J&J's private investigator went to 2217 N. American Street on Fight night and paid a $20 cover charge. The facility contained four 46" televisions showing these boxing matches.[9] The investigator swore the capacity of the banquet hall is approximately 100 people and she estimated between 64 and 73 persons present when she attended.[10] While the investigator described a "chef station along the rear wall cooking waffles and chicken," she did

not identify whether the patrons paid for this food or other evident expenses. Assuming UE Radio did not incur an expense, it would earn a $1,460 profit ($20 from 73 patrons) from pirating the pay-per-view telecast of the Fight. We have no evidence of the number of persons attending because of the pirated Fight.

It is undisputed neither UE Kitchen, LLC, d/b/a UE Radio nor Timothy Allen, paid J&J for the right to show the September 12, 2015 pay-per-view telecast of the Fight. J&J concedes it lacks evidence of UE Kitchen, LLC, UE Radio, or Timothy Allen ever pirating pay-per-view telecasts other than showing the Fight.

J&J sued Timothy Allen, individually and d/b/a UE Radio and UE Kitchen, LLC d/b/a UE Radio. Although served, no Defendant answered the Complaint. The Clerk of Court entered default and we scheduled a hearing on the damages to be awarded in a judgment. We ordered J&J to personally serve each Defendant. It did so.[11] Neither Defendant appeared at our noticed hearing. J&J presented affidavits and oral argument at our long-scheduled hearing. J&J elected not to request discovery for our damages hearing.

J&J argued we should award damages against UE Kitchen, LLC and against Timothy Allen, individually because Mr. Allen is the managing member of UE Kitchen, LLC. We asked J&J what evidence it adduced to show Mr. Allen received a financial benefit from showing the Fight to support the award of damages. J&J argued we should award damages against Mr. Allen because Mr. Allen admitted the allegation he managed UE Kitchen, LLC by defaulting. J&J further argued we are impeding it from getting statutory damages when J&J does everything asked of it and Defendants refuse to answer the summons and in our equitable powers we should permit him to recover against Mr. Allen, individually, without evidence of a financial benefit.

3

Absent discovery, J&J argues we should enter its requested amount of damages simply because it seeks them and the Defendants do not oppose. We appreciate the statutory purposes including deterring this piracy, but we cannot abandon fundamental principles of evidence and proof of damages. If J&J wants to maximize deterrence through substantial damages against those it deems responsible for the piracy, it can seek discovery before proceeding on a hearing seeking a money judgment and then present admissible evidence warranting enhanced damages.

## II.    Analysis

While a default admits liability, J&J must demonstrate its damages against Timothy Allen, individually and d/b/a UE Radio and UE Kitchen, LLC d/b/a UE Radio. J&J seeks statutory damages in lieu of actual damages, enhanced damages due to the willfulness of the piracy and to deter further piracy and attorney's fees and costs. We ordered J&J to file a post-hearing affidavit demonstrating the reasonableness of its attorney's fees and out-of-pocket costs.

### A. We award $3,460 in statutory damages against UE Kitchen, LLC d/b/a UE Radio.

J&J may elect statutory damages in lieu of actual damages.[12] Our statutory damages award must be at least $1,000 but no more than $10,000 per violation.[13] "The statutory damages provision authorizes courts to use their discretion to fashion factors to estimate, rather than compute actual damages."[14] Our statutory damages estimate includes two categories: (1) the amount the violator would have paid had he or she paid for a license; and (2) the violator's profits to the extent they are attributable to the violation.[15] In estimating profits, we consider:

> (1) the size of the establishment;
>
> (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant);

4

> (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch);
>
> (4) any cover charge levied because of the interception;
>
> (5) what additional money patrons spent because of the interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and
>
> (6) any such other factors as may appear relevant in the case before the court.[16]

The evidence is undisputed. J&J charges $2,000 for licensing this telecast at a facility with a capacity of 100 persons. J&J elected not to take discovery and did not offer evidence as to UE Radio's profits. While we could cap those profits at $1,460, we lack evidence as to who attended to watch the pirated Fight.

But in applying the factors, J&J adduced evidence of four televisions with a 46" flat screen television and three televisions in the bar area showing the pirated Fight. We do not know the size of the facility housing the 73 patrons and at least one hostess. We do not know whether the patrons spent other money while there. The undisputed evidence is a $20 cover charge for 73 persons.

We calculate statutory damages of $3,460 representing the fee which should have been paid for the telecast and the maximum profit of $1,460. We have no evidence to award more in statutory damages. We award $3,460 statutory damages against UE Kitchen LLC because it owns and operates UE Radio.[17]

### B. We award 33% in enhanced damages against UE Kitchen, LLC.

We may award enhanced damages of up to $100,000 for each willful violation committed "for purposes of direct or indirect commercial advantage or private financial gain."[18] Our award

5

of enhanced damages may reflect an amount we consider appropriate to deter the prohibited conduct.[19] Willfulness requires evidence of "intent and either knowledge of or reckless disregard for the illegality of the conduct, and not mere negligence."[20]

Our court of appeals has not defined the factors for an appropriate amount of enhanced damages. Our colleagues have adopted alternative measures to calculate an amount necessary to deter the prohibited conduct. In measuring enhanced damages, some courts apply a multiplier of at least three to six times the award of statutory or actual damages.[21] In deciding an appropriate multiplier, we may consider factors such as whether the violator is a repeat offender. Alternatively, courts will apply a series of factors in determining enhanced damages. We will not apply a multiplier in this case due to a lack of evidence of actual damages or other piracy of encrypted broadcasts by UE Radio.[22]

Instead, in a case where we have no evidence of repeated conduct, we find the deterrence goals of enhanced damages can be evaluated through factors described in *Joe Hand Promotions, Inc. v. Michelina Enterprises, Inc.*[23] We analyze "(1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast."[24]

As in *Michelina*, J&J adduced no evidence of UE Kitchen, LLC or Mr. Allen being repeat offenders. We also have no evidence of specific profits. But we have evidence of a $20 cover charge. While we have no evidence of substantial profits, we can fairly find profits from between 64 and 73 people paying a $20 cover charge. J&J adduced evidence of advertising

6

through an Instagram post by "bread_like_dat" announcing UE Radio would show the "Floyd Mayweather Jr. v. Andre Berto WBA/WBC Welterweight Championship Fight Program." We have no idea of who he is or his relationship to UE Radio, UE Kitchen, LLC, or Mr. Allen. We also have no evidence of J&J's actual damages.

On balance, we find willfulness from the advertising which we cannot discount simply because the social media came from an unknown "bread_like_dat." UE Radio is prominently mentioned in the advertisement. The undisputed evidence is between 64 and 73 people attended this exhibition. But the other four factors do not warrant a substantial premium of the statutory damages. Our evaluation of the adduced evidence, and our allegiance to the statutory purposes of deterrence, requires we award $1,141.80 as enhanced damages, representing a 33% enhanced premium of the statutory damages.

### C. J&J did not adduce evidence to hold Timothy Allen liable for the statutory and enhanced damages.

J&J seeks to impose liability for statutory and enhanced damages upon Timothy Allen individually. Mr. Allen can be individually liable if he "(1) has the right and ability to supervise the violative activity, although [he] need not actually be supervising, because [he] need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flows from the violative activity."[25]

Mr. Allen's liability is shown by more than mere conclusory allegations, as in *Michelina*. Mr. Allen, by defaulting, admitted he is the managing member of UE Kitchen, LLC. But this is it. Unlike *Chauca*, J&J adduced no evidence of Mr. Allen ordering the telecast, advertising the telecast or his presence in the facility for the showing.[26] J&J admittedly cannot show Mr. Allen engaging in this type of conduct before or after the pirated Fight. We cannot reach so far as to

7

find a person who is the managing member of a limited liability company made the decision to pirate this telecast or supervised the activities this evening. J&J may have adduced this evidence but elected not to try. We will not impose personal liability on a business owner for this piracy unless we have some evidence of his control over the offending entity or knowledge of this offense.

**D.     J&J did not adduce evidence of Timothy Allen doing business as UE Radio.**

In its caption to the Complaint, J&J sued Timothy Allen d/b/a UE Radio.[27] J&J does not allege Timothy Allen is actually doing business as UE Radio. Instead, J&J alleges Mr. Allen is the managing member of UE Kitchen, LLC d/b/a UE Radio and Mr. Allen supervised and directed UE Radio's employees.[28]

J&J's caption naming Timothy Allen d/b/a UE Radio, without more, is not enough for us to impose personal liability upon him for statutory and enhanced damages as the owner of UE Radio. In *Joe Hand Promotions, Inc. v. Murray*, Joe Hand sued Jane Murray d/b/a Brucekies Pub in the caption.[29] The district court found "aside from the caption, the Complaint offered no allegations that Jane Murray was actually doing business as Brucekies Pub" and instead, only alleged Ms. Murray is the managing member of the limited liability company doing business as Brucekies Pub.[30] The court found the name in the caption is not sufficient evidence to impose liability against Jane Murray d/b/a Brucekies Pub.[31]

J&J only named Timothy Allen as doing business as UE Radio in its caption and, as in *Murray*, there are not sufficient allegations to impose liability where the only allegations are Mr. Allen managed the limited liability company doing business as UE Radio and supervised and directed UE Radio's employees. We do not award damages against Timothy Allen d/b/a UE

Radio because J&J fails to allege Mr. Allen does business as UE Radio. Absent a defaulted allegation or proof at our noticed hearing, we cannot find Mr. Allen does business as UE Radio.

### E. We award J&J's reasonable attorney's fees and costs against all Defendants.

Congress directs us to award full costs and reasonable attorneys' fees to "an aggrieved party who prevails."[32] The Supreme Court described "prevailing party" as a legal term of art and cited *Black's Law Dictionary*'s definition of "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>.—Also termed *successful party*."[33]

We award costs and attorneys' fees to J&J as the prevailing party against both UE Kitchen, LLC and Timothy Allen. While we only award statutory and enhanced damages against UE Kitchen, LLC, J&J prevailed as to liability against both UE Kitchen, LLC and Timothy Allen because we rendered judgment against both parties in favor of J&J. J&J is the prevailing party against Timothy Allen "regardless of the amount of damages awarded."[34]

J&J submitted detailed unredacted invoices of its counsel's time and out of pocket expenses incurred in pursuing Defendants. J&J requests $2,061.72 in costs and $7,382.00 in attorneys' fees. We carefully reviewed the time entries and find they are reasonable in the amount and allocation of hours among attorneys and paralegals.

The hourly rates for experienced attorneys in this District are also reasonable and consistent with our earlier findings of reasonable rates in commercial matters. The billed hourly rates of J&J's national ($500) and local ($400) counsel are reasonable for attorneys of their experience in this District. Absent objection, we consider the present billing rates for attorneys in this District since 2015 known in this Court.[35] Principally relying upon our independent

9

evaluation of reasonable hourly rates for attorneys practicing commercial litigation in this Court, we find J&J's requested attorney's fees and costs are reasonable and necessary.

## III. Conclusion

Following a hearing, we find J&J is entitled to default and finding of liability against Defendants which permits an award of reasonable attorney's fees and costs as the prevailing party. We also award statutory damages and enhanced damages against UE Kitchen, LLC. We recognize Congress' purpose in stopping this piracy and agree an effective way of doing so would include damages against the individual who is named as a managing member of the limited liability company which pirated the Fight and charged a $20 cover to watch the Fight. But the lawful distributor of the telecast rights must adduce evidence to allow findings of substantial enhanced damages and personal liability of the individual owning the business. It elected not to do so here. In the accompanying Judgment, we enter a damages judgment of $14,045.52 against UE Kitchen, LLC. and $9,443.72 against Timothy Allen.

---

[1] ECF Doc. No. 1, ¶ 15.

[2] *Id.* ¶ 11.

[3] *Id.* ¶ 7.

[4] *Id.* ¶¶ 8, 12.

[5] *Id.* ¶ 11.

[6] ECF Doc. No. 13-2 at 4.

[7] *Id.* at 3.

[8] ECF Doc. No. 14, ¶ 8.

[9] ECF Doc. No. 13-2 at 2.

[10] *Id.* at 3.

[11] J&J's lawyer cited his client's expenses in ensuring repeated notice as an additional burden. We view notice of our Orders, particularly scheduling matters affecting property rights, as fundamental to our obligations before entering judgment. These are costs of litigation recoverable today under our Order.

[12] 47 U.S.C. § 605(e) (3)(C)(i).

[13] 47 U.S.C. § 605(e) (3)(C)(i)(II).

[14] *J & J Sports Prods., Inc. v. Cruz*, No. 14-2496, 2015 WL 2376051, at *5 (E.D. Pa. May 18, 2015) (citing *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 277 (E.D. Pa. 2014)).

[15] *Id.* (quoting 47 U.S.C. § 605(e) (3)(C)(i)(I)).

[16] *Id.* (quoting *Yakubets*, 3 F. Supp. 3d at 280).

[17] ECF Doc. No. 1, ¶ 7.

[18] 47 U.S.C. § 605(e)(3)(C)(ii).

[19] *J & J Sports Prods., Inc.*, 2015 WL 2376051, at *5.

[20] *Id.* (quoting *Yakubets*, 3 F. Supp. 3d at 282–83).

[21] *Id.* at *7.

[22] *J&J Sports Prods., Inc. v. Chauca*, No. 14-6891, 2015 WL 7568389, at *3 (E.D. Pa. Nov. 25, 2015).

[23] No. 16-1880, 2017 WL 3581674 at *4 (M.D. Pa. Aug. 18, 2017).

[24] *Id.* at *4 (citing *Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *7 (D.N.J. Mar. 13, 2013)).

[25] *Chauca*, 2015 WL 7568380, at *5 (quoting *Yakubets*, 3 F.Supp. 3d at 296 (emphasis omitted)).

[26] *Id.* (individual owner/manager admitted he ordered the pirated telecast, advertised the telecast and was inside the room showing the telecast the same night).

[27] ECF Doc. No. 1 at 4.

[28] *Id.* ¶¶ 8, 11-12.

[29] No. 15-5631, 2016 WL 3903205 at *4 (E.D. Pa. July 18, 2016).

[30] *Id.*

[31] *Id.*

[32] 47 U.S.C. § 605(e)(3)(B)(iii).

[33] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (quoting *Black's Law Dictionary* 1145(7th ed. 1999).

[34] *Id.* (quoting *Black's Law Dictionary* 1145(7th ed. 1999).

[35] *See DVComm, LLC v. Hotwire Communications, LLC*, No. 14-5543, ECF Doc. No. 149 (E.D. Pa. Feb. 16, 2016).